**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SHAWN TROY BRISTOW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs.  ) | Case No. 11-CV-562-TCK-PJC |
| ) | |
| TODD FENTON; WESLEY CLIMMER; ) | |
| MIKE WATERS; CLINT STOUT; ) | |
| OFFICER LEE (Cleveland Police); ) | |
| JERRI SHAW, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This is a 42 U.S.C. § 1983 civil rights action commenced by Plaintiff, a state prisoner appearing *pro se*. Plaintiff filed his federal civil rights complaint (Dkt. # 1) on September 7, 2011. Defendants filed Special Reports (Dkt. #s 23, 25). Defendants Clymer,[1] Fenton, Shaw, and Stout filed a motion to dismiss or, in the alternative, for summary judgment (Dkt. # 24). Plaintiff filed a response to that motion (Dkt. # 28) and Defendants filed a reply (Dkt. # 29). Defendant Lee filed an answer (Dkt. # 26). He also filed an amended motion for summary judgment and brief in support (Dkt. # 31). On August 21, 2012, Plaintiff filed a response (Dkt. # 35) to Defendant Lee's amended motion. Defendant Lee filed a reply (Dkt. # 37). For the reasons discussed below, Defendants are entitled to summary judgment and their motions shall be granted. The claim against Defendant Shaw, challenging the conditions of confinement at the Pawnee County Jail (PCJ), shall be dismissed without prejudice for failure to exhaust administrative remedies.

---

[1] Although Plaintiff has sued Wesley "Climmer," that defendant spells his name Wesley "Clymer" in response to Plaintiff's allegations. His surname will be spelled "Clymer" herein.

## *BACKGROUND*

In the "Nature of Case" section of his complaint (Dkt. # 1), Plaintiff provides the following statement:

> My home was illegally raided on two seperate [sic] occassions [sic] with no warrants [or] probable cause. And on one of these occassions [sic] evidents [sic] was planted.

See Dkt. # 1. Based on those facts, Plaintiff identifies four (4) causes of action, as follows:

Count 1: On the date of (9-16-2009) my constitutional and civil rights were violated by law enforcement when my home was illegally raided.

Count 2: On the date of (3-29-2011) my constitutional and civil rights were violated by law enforcement when my home was illegally raided.

Count 3: On the date of (March 29th 2011) my civil and constitutional rights were violated when law enforcement planted illegal evident [sic] in my trash can.

Count 4: My civil and constitutional right have been violated by the Pawnee County Jail Administration and my rights under the American Disability Act [sic].

(Dkt. # 1). He names six (6) defendants: Todd Fenton, Wesley Clymer, Jerri Shaw, Mike Waters, Clint Stout, and Officer Lee. In his request for relief, Plaintiff asks for "monetary relief in the amount of one million dollars per count, in the total amount of four million dollars, and all persons involved to be fired and jailed." Id. By Order filed November 29, 2011 (Dkt. # 6), the Court dismissed Defendant Waters without prejudice for failure to state a claim upon which relief may be granted. In addition, Count 3 and those portions of Count 4 alleging violation of the Americans With Disabilities Act (ADA) and the claim regarding access to a law library were dismissed without prejudice for failure to state a claim. Id. Plaintiff's request that "all persons involved be fired and jailed" was denied. Id. The remaining claims, Counts 1, 2, and part of 4, were served on Defendants Fenton, Clymer, Stout, Lee, and Shaw. As stated above, Defendants seek summary judgment or dismissal of Plaintiff's claims.

## *UNCONTROVERTED FACTS*

**A. Search conducted September 18, 2009**[2]

1. On September 18, 2009, Defendants Fenton and Clymer, District 10 Drug Task Force Officers, searched Plaintiff's property, located at 201 N. Dunlap, in Cleveland, Oklahoma. See Dkt. # 23, Ex. 2.

2. Prior to the arrival of Defendants Fenton and Clymer, see Dkt. # 23, Ex. 2, Officer Robert Stephens of the Cleveland Police Department obtained consent to search from Savannah Hovorka,[3] a woman who was present at the house. See Dkt. # 23, Ex. 1.

3. During the search, the officers found items they believed to be used in a laboratory for manufacturing methamphetamine. See Dkt. # 23, Ex. 2.

4. Based on observations at the house, Defendant Fenton prepared an Affidavit, see id., supporting Plaintiff's arrest on the charge of Endeavoring to Manufacture Methamphetamine.

5. On September 22, 2009, Pawnee County Associate District Judge Matthew Henry signed an order finding probable cause for detaining Plaintiff. Id. at 2.

6. By Information filed September 22, 2009, Plaintiff was charged in Pawnee County District Court, Case No. CF-09-100, with Endeavoring to Manufacture Methamphetamine. See Dkt. # 29, Ex. 3.

---

[2] Plaintiff alleges that the first search of his residence occurred on September 16, 2009. However, the records provided by Defendants demonstrate that the search actually took place on September 18, 2009.

[3] Multiple spellings of Ms. Hovorka's surname appear in the record. The Court will use the spelling "Hovorka" herein.

7. At the preliminary hearing held in Case No. CF-09-100, on July 15, 2010, the state court found probable cause to bind Plaintiff over for trial. See Dkt. # 29, Ex. 4.

8. On August 31, 2010, Plaintiff filed a brief in support of a motion to suppress evidence of illegal search and seizure. See Dkt. # 29, Ex. 5. The basis of the request to suppress evidence was that the consent to search was improperly obtained from Savannah Hovorka. Id.

9. On October 8, 2010, Plaintiff's motion to suppress was denied. See Dkt. # 29, Ex. 7.

10. On October 22, 2010, the charge filed against Plaintiff in Case No. CF-09-100 was dismissed. See www.odcr.com.

**B. Entry, protective sweep and search conducted March 30, 2011**[4]

1. On March 30, 2011, Officers Lee and Bartley of the Cleveland Police Department responded to a call reporting that Plaintiff had come to a neighbor's home, smelling of methamphetamine and asking to stay because Plaintiff's house was too smoky. See Dkt. # 31, Exs. 1 and 2.

2. Defendant Lee, Officer Bartley, and Defendant Stout, a Pawnee County Deputy Sheriff, went to Plaintiff's residence, located at 202 N. C Street, at 3:20 a.m., see Dkt. # 25, Ex. 2, where they smelled an odor associated with the illegal manufacture of methamphetamine coming from the residence. See Dkt. # 31, Exs. 1 and 2.

---

[4]Plaintiff alleges that the incidents giving rise to his claims in Count 2 occurred on March 29, 2011. However, the records provided by Defendants demonstrate that the events actually took place on March 30, 2011.

4

3.  Defendant Lee knocked on the door and identified himself as a police officer. See Dkt. # 31, Ex. 1. Plaintiff answered, but declined to open the door to allow the officers to enter his house. Id.

4.  Defendant Stout said he could hear sounds of movement coming from the back of the house. Id.

5.  Defendant Lee made entry into the house with his gun drawn. Id. Once Plaintiff complied with Defendant Lee's order to go to the floor, Defendant Lee holstered his gun. Id.

6.  Officer Bartley, along with Defendants Stout, Clymer, and Fenton performed a protective sweep of the residence. See Dkt. # 31, Ex. 1; Dkt. # 23, Ex. 3.

7.  Based on the officers' observations, Defendant Clymer prepared an Affidavit of Probable Cause for Search Warrant. See Dkt. # 23, Ex. 3.

8.  A search warrant issued. Id., Ex. 4.

9.  Based on evidence found at the residence upon execution of the search warrant, Petitioner was charged with Endeavoring to Manufacture Methamphetamine and Trafficking in Methamphetamine in Pawnee County District Court, Case No. CF-2011-42. Id., Ex. 5.

10. On October 14, 2011, Plaintiff entered pleas of guilty to the charges filed in Case No. CF-2011-42. Id.

**C. Conditions at the PCJ**

1.  Plaintiff does not contest Defendants' assertion, see Dkt. # 23 at 7, that he was housed in the PCJ from March 18, 2010, to October 8, 2010, and from March 30, 2011, to November 10, 2011. See Dkt. # 23 at 7. The focus of Plaintiff's claims appears to be the time period from March 30, 2011, to November 10, 2011. See Dkt. # 28 at 6-7.

2.       Plaintiff was housed in Cell 1, measuring in the range of 128-144 sq. ft,[5] with limited exposure to sunlight and limited opportunity for exercise. See Dkt. # 23 at 8. The cell contained 5 beds. Id.

3.       Plaintiff does not contest Defendants' assertions that from March 30, 2011, to November 10, 2011, Plaintiff was released from Cell 1 to go to court on 8 separate occasions and to go to the doctor on 1 occasion. See Dkt. # 23 at 8.

## *ANALYSIS*

### A.  Summary judgment standard

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). "Summary judgment will not lie if the dispute about a material

---

[5]Plaintiff claims the cell measured 8 feet wide by 16 feet long. See Dkt. # 28 at 5. Defendants claim the cell measured 6.5 feet wide by 22.25 feet long. See Dkt. # 23 at 8.

fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994).

**B. Plaintiff's claims**

**1. Count 1 -- search of Plaintiff's residence on September 18, 2009**

Plaintiff claims that the search of his residence, conducted on September 18, 2009, was illegal because Savannah Hovorka's consent to search, allegedly obtained because she was threatened by Officer Robert Stephens, was invalid. See Dkt. # 1. In support of their motion for summary judgment, Defendants Clymer and Fenton[6] provide a copy of the consent to search form, signed by Savannah Hovorka. See Dkt. # 23, Ex. 1. Ms. Hovorka stated that she had been informed of her constitutional right not to have a search made without a search warrant and of her absolute right to refuse to consent to the search. Id. Defendants have also provided a partial transcript from the preliminary hearing, held July 15, 2010, in Pawnee County District Court, Case Nos. CF-09-99, CF-09-100, and CF-10-22. See Dkt. # 29, Ex. 2. At that hearing, Officer Stephens testified that he came into contact with Ms. Hovorka on the front porch of the residence. Id. at 20. He asked her if she lived there. She responded, "Yes, she did." Id. Officer Stephens also testified that during the search, officers found some letters addressed to her with her name and the address of 201 North Dunlap. Id. at 22. Ms. Hovorka consented to the search. Id. at 21. Defendants also provided a copy of a Brief in Support of Motion to Suppress Evidence of Illegal Search and Seizure filed by Plaintiff in Pawnee County District Court, Case No. CF-2009-100. See Dkt. # 29, Ex. 5. In that motion,

---

[6]Although Plaintiff alleges that Defendant Stout, a Deputy Sheriff for Pawnee County, took part in the search on September 18, 2009, Plaintiff has failed to controvert Defendants' summary judgment evidence demonstrating that only Defendants Fenton and Clymer searched Plaintiff's residence.

Plaintiff argued that Ms. Hovorka's consent to search was invalid because "Savannah Hovorka was just a friend who did not reside in the house and actually lived at 803 West Delaware Street in Cleveland." Id. at 2. The motion to suppress was denied by minute order filed October 8, 2010. Id., Ex. 7.

Plaintiff has failed to provide evidence controverting the summary judgment evidence presented by Defendants. Plaintiff relies only on his self-serving, unsupported statements that Ms. Hovorka was not authorized to give consent to search and did so only after being threatened by Officer Stephens. That issue, however, was fully litigated in Plaintiff's Pawnee County criminal case. Plaintiff lost when the motion to suppress was denied. Plaintiff has failed to provide any evidence suggesting that the ruling on the motion to suppress was ever revisited.[7] Furthermore, as noted by Defendants, Plaintiff has failed to controvert Defendants' summary judgment evidence demonstrating that Officer Stephens, who is not a named defendant in this action, had already talked to and obtained consent from Ms. Hovorka before Defendants Fenton and Clymer arrived to search the house. See Dkt. # 23, Ex. 2. Defendants Fenton and Clymer were entitled to rely on the consent obtained by Officer Stephens and were not required to second guess its validity. See Stearns v. Clarkson, 615 F.3d 1278, 1286 (10th Cir. 2010). The summary judgment record demonstrates that there is no genuine issue as to any material fact and that Defendants Fenton and Clymer are entitled

---

[7]The Court recognizes that Plaintiff claims that the charge filed in Case No. CF-2009-100 was "droped [sic]." See Dkt. # 28. According to the docket sheet, viewed at www.odcr.com, the charge of Endeavoring to Manufacture Methamphetamine was in fact dismissed on October 22, 2010. No reason for the dismissal is noted on the docket sheet. The Court also notes that, on October 22, 2010, Plaintiff entered a plea of guilty to Bail Jumping, in Pawnee County District Court, Case No. CF-2010-022. See www.odcr.com.

to judgment as a matter of law. Therefore, entry of summary judgment in favor of Defendants Fenton and Clymer is appropriate as to Count 1 and their motion shall be granted.

**2. Count 2**

**a. Entry, protective sweep, and search of Plaintiff's residence on March 30, 2011**

Plaintiff also claims that on March 30, 2011, multiple illegal searches of his residence were conducted in violation of the Fourth Amendment. See Dkt. # 1. First, he claims that Defendant Lee, along with Officer Bartley, of the Cleveland Police Department, entered his home without a warrant and that Officer Lee held a gun to his head. About thirty (30) minutes later, Defendants Fenton and Clymer arrived and began a second illegal search. At the same time, Defendant Stout brought a police dog into his home. Plaintiff claims that none of the searches produced anything illegal. Id.

The summary judgment record provided by Defendants demonstrates that Officers Lee and Bartley of the Cleveland Police Department responded to a call reporting that Shawn Bristow had come to a neighbor's house, needing a place to stay because his house was too smoky, and smelling of methamphetamine. See Dkt. # 31, Exs. 1 and 2. Deputy Stout joined the police officers at Plaintiff's home where they smelled the odor of methamphetamine. Id. Officer Lee knocked on Plaintiff's door and identified himself as a police officer. Id. Plaintiff came to the door, but refused to open it. Id. Officer Lee, concerned for the safety of the occupants of the house, made entrance to the house, with his gun drawn. Id. Officer Lee claims he held his gun at "low ready," pointed towards the floor. Id. Plaintiff claims Officer Lee pointed the gun at his head and threatened him. See Dkt. # 1. Plaintiff complied with Officer Lee's order to go to the ground. See Dkt. # 31, Exs. 1 and 2. He was handcuffed. Id. Both Officers Lee and Bartley deny that Officer Lee pointed a gun

9

at Plaintiff's head. Id. Once Plaintiff was secured, Officer Bartley contacted the District 10 Drug Task Force who came to the scene. Id., Ex. 1.

The Affidavit of Probable Cause for Search Warrant, prepared by Defendant Clymer, confirms that Defendant Stout, from the Pawnee County Sheriff's Office, arrived at Plaintiff's residence and assisted with removing the residents, Shawn Bristow and Savannah Hovorka, from the hazards posed by the conditions in the home. See Dkt. # 25, Ex. 3. Thereafter, Defendants Fenton and Clymer arrived at the scene and conducted a protective sweep of the residence. Id. Defendant Clymer detected the odor of methamphetamine inside the residence, although he did not observe any items associated with the manufacture of methamphetamine in plain view. Id. Defendant Fenton talked with Plaintiff and reported that he detected the odor of a methamphetamine lab on Plaintiff's person. Id. Based on that information, Defendant Clymer requested and was granted issuance of a search warrant for Plaintiff's residence. See Dkt. # 25, Exs. 3 and 4.

Plaintiff was ultimately arrested and charged with Endeavoring to Manufacture Methamphetamine and Trafficking in Illegal Drugs in Pawnee County District Court, Case No. CF-2011-42. On June 20, 2011, Plaintiff's motion to suppress was denied in that case. See www.odcr.com. Plaintiff's motion to quash for insufficient evidence was denied on September 9, 2011. Id. On October 14, 2011, Plaintiff entered guilty pleas to Endeavoring to Manufacture Methamphetamine and Trafficking in Case No. CF-2011-42. See Dkt. # 23, Ex. 5.

Defendants Fenton, Clymer and Stout move for summary judgment arguing that Plaintiff's civil rights claim asserted in Count 2 is barred by Heck v. Humphrey, 512 U.S. 477 (1994). See Dkt. # 24. Defendant Lee asserts a similar argument, i.e., that Plaintiff's guilty plea precludes his claims regarding the lawfulness of his arrest. See Dkt. # 31. In Heck, the Supreme Court held that:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Heck, 512 U.S. at 486-87. Thus, if a judgment in favor of the plaintiff would necessarily imply the invalidity of his continued confinement, then the § 1983 complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. Heck, 512 U.S. at 487. An action under 42 U.S.C.1983 seeking damages for an alleged illegal search and seizure of evidence upon which criminal charges are based is barred by Heck until criminal charges have been dismissed or the conviction has been overturned. It is clear from Plaintiff's complaint that his convictions, based on evidence obtained from the search of his residence, have not been invalidated. Therefore, under Heck, the portion of Count 2 challenging the entry, protective sweep, and search of his residence, fails to state a cognizable claim under 1983 and must be dismissed without prejudice. The summary judgment record demonstrates that there is no genuine issue as to any material fact and that Defendants Fenton, Clymer, Stout, and Lee are entitled to judgment as a matter of law. Therefore, entry of summary judgment in favor of those Defendants is appropriate as to Plaintiff's claims challenging the legality of the entry, protective sweep, and search of his residence, as raised in Count 2, and their motions for summary judgment shall be granted.

### b. Excessive use of force by Defendant Lee

Plaintiff also alleges that after kicking his door to gain entry into his house, Defendant Lee "placed a gun to my head and told me he would shoot me." See Dkt. # 1 at 7. Defendant Lee asserts that, to the extent Plaintiff claims he was subjected to an excessive use of force, Defendant Lee is

entitled to qualified immunity because there was no Fourth Amendment violation. The Court finds Plaintiff has failed to controvert Defendant's summary judgment evidence. Defendant Lee is entitled to qualified immunity on Plaintiff's claim of excessive use of force.

The doctrine of qualified immunity shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law. See Pearson v. Callahan, 555 U.S. 223 (2009). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The qualified immunity inquiry requires analysis of two distinct questions: (1) whether, when taken in the light most favorable to the plaintiff as the party asserting the injury, the plaintiff demonstrates sufficient facts to show the public official's conduct violated plaintiff's constitutional rights; and (2) whether the constitutional right alleged to be violated was clearly established at the time of the alleged violation in a sufficiently analogous factual setting. See Saucier v. Katz, 533 U.S. 194, 201 (2001), *abrogated in part by* Pearson, 555 U.S. 223. While it is often desirable to proceed initially with the first prong, a finding of qualified immunity may be appropriate on either question. See Pearson, 555 U.S. at 236. If both inquiries can be met in the affirmative, then the defendant is not entitled to qualified immunity. See Saucier, 533 U.S. at 201.

"In rebutting a qualified immunity claim at the summary judgment level, a plaintiff can no longer rest on the pleadings and the court looks to the evidence before it (in the light most favorable to the plaintiff)." Axson-Flynn v. Johnson, 356 F.3d 1277, 1299 (10th Cir. 2004) (internal citation and quotation marks omitted). "Once the plaintiff makes this showing, the defendant bears the usual burden of a party moving for summary judgment to show that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Id. at 1299-1300. "More

specifically, the defendant must show that there are no material factual disputes as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time." Id. at 1300. "At all times during this analysis, we evaluate the evidence in the light most favorable to the nonmoving party." Id.

Defendant Lee's use of force against Plaintiff is analyzed under the Fourth Amendment which guarantees citizens the right to be free from unreasonable searches and seizures. Graham v. Connor, 490 U.S. 386, 388 (1989); Terry v. Ohio, 392 U.S. 1, 8 (1968). The Fourth Amendment standard governing excessive force claims is well settled. "[L]aw enforcement officers must be 'objectively reasonable' in their searches and seizures." Dixon v. Richer, 922 F.2d 1456, 1461 (10th Cir. 1991). According to the Supreme Court,

> Determining whether force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake . . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight . . . . The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

Graham, 490 U.S. at 396 (alterations, citations, and quotations omitted). A court "must assess reasonableness from the perspective of a reasonable officer on the scene, 'rather than with the 20/20 vision of hindsight,' and consider that 'police officers . . . make split-second judgments--in circumstances that are tense, uncertain and rapidly evolving--about the amount of force necessary in a particular situation.'" Blossom v. Yarbrough, 429 F.3d 963, 967 (10th Cir. 2005) (quoting Graham, 490 U.S. at 396-97). To evaluate excessive force, the Court views the facts from the

13

perspective of the officer. See Graham, 490 U.S. at 396-97. The focus of the inquiry is on the circumstances as they existed at the moment force was used. Id. In evaluating an excessive force claim, courts are to consider the totality of the circumstances. Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004) (citing Sevier v. City of Lawrence, 60 F.3d 695, 699 (10th Cir. 1995)).

Applying Graham and considering the totality of the circumstances, the Court finds that Officer Lee used a reasonable amount of force to arrest Plaintiff. The evidence, viewed in the light most favorable to Plaintiff, shows that, as Officers Lee and Bartley approached Plaintiff's house, they smelled an odor associated with the manufacture of methamphetamine. Officer Lee knocked on the door and identified himself as a police officer. Plaintiff came to the door, but refused to open it. Deputy Stout stated that he could hear someone moving around inside. Concerned for the safety of the occupants, Officer Lee, followed by Officer Bartley, made entrance to the house. Officer Lee claims he had his gun drawn and at "low ready," or pointed ahead of him at about a 45-degree angle toward the floor, as he had been taught during his training at CLEET (Council on Law Enforcement Education and Training). Although Plaintiff claims the gun was pointed at his head and that Officer Lee threatened to shoot him, Officer Lee denies that he pointed the gun at Plaintiff's head. See Dkt. # 31, Ex. 1. Officer Bartley, who was also present as Officer Lee made entry into Plaintiff's house, denies that Officer Lee pointed the gun at Plaintiff's head. Id., Ex. 2. Once the officers made entry, Officer Lee ordered Plaintiff to the ground. Plaintiff complied and was handcuffed. Id., Ex. 1. Plaintiff does not allege that he suffered any serious physical injury from the encounter, but this is not the end of the Court's inquiry. Several other factors support Defendant Lee's assertion that the use of some force was reasonable to secure and arrest plaintiff. Plaintiff refused to open the door and the odor of methamphetamine strongly suggested he was engaged in dangerous activity. It is

clear that it was reasonable for Defendant Lee and Officer Bartley to use some amount of force to secure and arrest Plaintiff and to protect themselves during the encounter. Considering Plaintiff's initial refusal to cooperate, the minimal injuries suffered by Plaintiff, and the tense nature of the situation, the amount of force used by Defendant Lee was reasonable under the circumstances and he is entitled to qualified immunity from Plaintiff's excessive force claim. His motion for summary judgment shall be granted as to any excessive use of force claim raised in Count 2.

### 3. Count 4 -- conditions of confinement at the PCJ

In Count 4, Plaintiff complains that during his incarceration at the PCJ, he was denied his right to access a law library; he was confined in his cell 24 hours a day, 7 days a week and not given any large muscle recreation or sufficient exposure to sunlight; and, during the period from July 17, 2011, to August 29, 2011, he was denied basic hygiene items such as soap, toothpaste, and toothbrush. See Dkt. # 1; Dkt. # 28 at 7. He asserts these claims against Defendant Shaw, and argues that the deprivations violated his constitutional rights and the ADA. Id. As discussed above, the Court has previously dismissed without prejudice those portions of Count 4 alleging violation of the ADA and the claim regarding access to a law library. See Dkt. # 6.

Defendant Shaw asserts entitlement to summary judgment on the remaining Count 4 claims based on Plaintiff's failure to exhaust administrative remedies. Pursuant to the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other

wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. Woodford v. Ngo, 548 U.S. 81 (2006); Booth v. Churner, 532 U.S. 731, 741 (2001). The statutory exhaustion requirement is mandatory, and this Court is not authorized to dispense with it. See Beaudry v. Corr. Corp. of America, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). There is no futility exception to § 1997e(a)'s exhaustion requirement. Booth, 532 U.S. at 741 n.6 ("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). To satisfy the exhaustion requirement, an inmate must comply "with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of is proceedings." Ngo, 548 U.S. at 90-91. As a result, "the PLRA exhaustion requirement requires proper exhaustion." Id. at 93. An inmate's failure to exhaust administrative remedies under the PLRA is an affirmative defense and the inmate is not required to specially plead or demonstrate exhaustion in his complaint. Jones v. Bock, 549 U.S. 199, 212 (2007). Defendants thus bear the burden of asserting and proving that the plaintiff did not utilize administrative remedies. Id.; Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007). Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials. Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011).

In this case, Defendants acknowledge that Plaintiff submitted grievances regarding access to a law library. However, in their Special Report (Dkt. # 23), Defendants state that Plaintiff never submitted grievances complaining of the alleged lack of hygiene items, the small size of his cell, the

16

lack of opportunity for movement or exercise, and lack of sunshine. See id. at 7-8. Defendants fail to provide affidavits or other summary judgment evidence supporting this statement. However, Sheriff Mike Waters prepared the Special Report and declared, under penalty of perjury, that the "findings and determinations herein" are based upon his "knowledge of the subject matter, review of numerous documents and reports, and discussions with various District 10 Drug Task Force members and Pawnee County Sheriff's Office employees." See Dkt. # 23 at 10. In his response to Defendants' motion for summary judgment (Dkt. # 28), Plaintiff claims that he "did file several grievances and wrote letters to both Jerri Shaw the jail administrator and Mike Waters the Sheriff and on countless occasions voiced my complaint to jail staff, all in vain." Plaintiff does not provide copies of the "several grievances" or letters.[8]  As a result, the record is devoid of any evidence demonstrating that Plaintiff submitted grievances regarding the alleged lack of hygiene items, the small size of his cell, the lack of opportunity for movement or exercise, and lack of sunshine. In light of Sheriff Waters' statements, made under penalty of perjury, that Plaintiff failed to submit grievances, the Court finds Defendant Shaw has carried her summary judgment burden as to the affirmative defense of failure to exhaust administrative remedies. The motion for summary judgment shall be granted as to Count 4 and the claim shall be dismissed without prejudice for failure to exhaust administrative remedies.

Furthermore, even if Plaintiff submitted grievances as he claims, he is not entitled to the remedy he seeks: money damages.  The PLRA also precludes recovery of money damages for a conditions of confinement claim in the absence of a showing of physical injury. See 42 U.S.C. §

---

[8]The Court notes that Plaintiff attached to his complaint copies of a grievance regarding access to the law library and a request for medical treatment. See Dkt. # 1, attachments. Those attachments demonstrate that Plaintiff was familiar with the grievance and medical care policies at the PCJ.

17

1997e(e) (providing that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury"). In his complaint, Plaintiff does not allege that he has suffered any physical injury as a result of the conditions of his confinement at the PCJ. Therefore, he is not entitled to the relief sought for the constitutional violations alleged in Count 4. See Searles v. Van Bebber, 251 F.3d 869, 876 (10th Cir. 2001).

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. Defendants' motion for summary judgment (Dkt. # 24) is **granted** as to Counts 1, 2, and 4.

2. Defendant Lee's amended motion for summary judgment (Dkt. # 31) is **granted**.

3. Count 3 and parts of Count 4 were dismissed without prejudice by prior Order (Dkt. # 6).

4. The remaining claims in Count 4 are **dismissed without prejudice** for failure to exhaust administrative remedies.

5. The alternative motion to dismiss (Dkt. # 24) is **declared moot**.

6. This is a final Order terminating this action.

7. A separate judgment in favor of Defendants shall be entered in this matter.

DATED THIS 15th day of March, 2013.

*[signature: Terence Kern]*

**TERENCE KERN**
**United States District Judge**